# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

    v.                                                                **Case No. 16-CR-132**

**DWAYNE THOMPSON**
       **Defendant.**

## DECISION AND ORDER

The government charged defendant Dwayne Thompson with possessing firearms as a felon. 18 U.S.C. § 922(g)(1). Defendant filed a motion to suppress statements he made while officers executed a search warrant at his residence, arguing that he did not validly waive his Miranda rights or voluntarily provide incriminating information to law enforcement. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then issued a recommendation that the motion be denied. Defendant objects, so I must review the matter de novo. See Fed. R. Crim. P. 59(b).

**I.**

The facts are not in dispute. I adopt the magistrate judge's factual recitation (R. 21 at 2-5) and present an abbreviated version of events herein.

Law enforcement officers executed a search warrant at defendant's residence, recovering firearms. ATF Agent Adamson and Milwaukee Detective Dodd took defendant in handcuffs from the residence to Adamson's vehicle for an interview, placing him in the front passenger seat. Adamson sat in the driver's seat, with Dodd behind him. Adamson turned on the car's heat and read defendant a copy of the search warrant; on defendant's request, Dodd

obtained the attachments referenced in the warrant, which Adamson then read to defendant.

After obtaining biographical information, Adamson asked defendant if he had ever been read his rights before; defendant said he had. After confirming that defendant could read, Adamson asked defendant to follow along as Adamson read defendant the Miranda rights from a pre-printed card. Adamson asked defendant if he understood each of these rights, and defendant replied, "yeah." Adamson then asked, "Realizing that you have these rights, are you now willing to answer questions or make a statement?" However, before defendant responded, Adamson continued on, explaining that it was up to defendant whether he wanted to answer questions, that defendant could respond to any question he wanted to answer, and that if he did not want to answer a question he could say so. Adamson also indicated that officers were there to search the house and that they had already found firearms. Without specifically indicating that he wanted to answer questions, defendant proceeded to make statements.

During the interview, which lasted a little less than two hours, defendant never requested an attorney or indicated that he wanted to stop talking. At no point did the officers draw their weapons or otherwise threaten defendant, nor did he complain about his treatment.

**II.**

Before subjecting a person to custodial interrogation, the police must advise the person of his rights to silence and counsel. See Miranda v. Arizona, 384 U.S. 436 (1966). Any waiver of these rights must be voluntary, knowing, and intelligent. Coleman v. Hardy, 690 F.3d 811, 815 (7th Cir. 2012). "To be voluntary, the waiver must simply be non-coerced; to be knowing and intelligent, waiver must be made with 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). A court may conclude that a suspect waived his Miranda

2

rights if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension. Id. Although a Miranda waiver will not be presumed from mere silence after the warnings are given, the waiver need not be express. North Carolina v. Butler, 441 U.S. 369, 373 (1979). "It may be inferred from a defendant's understanding of [his] rights coupled with a course of conduct reflecting [his] desire to give up [his] right to remain silent." United States v. Smith, 218 F.3d 777, 781 (7th Cir. 2000).

The defendant's statements must also be voluntary. See, e.g., United States v. Williams, 128 F.3d 1128, 1131 (7th Cir. 1997). "A confession is voluntary if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." Watson v. Detella, 122 F.3d 450, 453 (7th Cir. 1997). Relevant factors include the nature and duration of the questioning; whether the defendant was prevented from eating or sleeping; whether the defendant was under the influence of drugs or alcohol; and the defendant's age, intelligence, education, and experience with the criminal justice system. Id. Because coercive police activity is a necessary predicate to a finding of involuntariness, however, a defendant's personal characteristics alone are insufficient to render a confession involuntary. Id. (citing Colorado v. Connelly, 479 U.S. 157, 167 (1986)).

"The government bears the burden of demonstrating the admissibility of a confession. This requires the government to prove by a preponderance of the evidence the defendant's Miranda waiver and the voluntariness of the confession." United States v. Stewart, 536 F.3d 714, 719 (7th Cir. 2008) (internal citations omitted).

**III.**

The magistrate judge correctly determined that defendant knowingly and voluntarily

3

waived his Miranda rights. Adamson read defendant the Miranda rights, and defendant indicated that he understood them. Adamson also confirmed that defendant could read and that he had been advised of the rights before. Nothing in defendant's appearance or demeanor suggested that he was under the influence or otherwise unable to understand his rights on this occasion; defendant asked the officers to obtain the attachments to the search warrant and responded to Adamson's questions appropriately. While defendant did not expressly state that he wished to waive his rights and answer questions, his decision to immediately begin speaking constituted an implied waiver. This case is indistinguishable from Smith, where the court found that the defendant's conduct demonstrated a waiver of her right to remain silent:

> She immediately began talking to the agents after refusing to sign the waiver form and continued to do so for an hour. During that entire time, she never requested an attorney and never asked that the questioning be stopped. There can be no credible argument under these facts that Smith's conduct was not a waiver of her Miranda rights.

218 F.3d at 781; see also United States v. Upton, 512 F.3d 394, 399 (7th Cir. 2008) (finding implied waiver where the defendant did not sign an acknowledgment form but did tell the officers he understood his rights and freely talked about the allegations against him), overruled in part on other grounds by United States v. Miller, 731 F.3d 435, 444 (7th Cir. 2013).

The magistrate judge also correctly determined that defendant's statements were voluntary. The officers employed no coercive tactics to extract the statements. Although he was handcuffed, defendant never complained of physical discomfort, and Adamson tried to make defendant comfortable by turning on the car's heat and providing water. Defendant seemed relaxed and talkative. Finally, the interview lasted less than two hours, and nothing in the record suggests that defendant was particularly vulnerable or suggestible.

4

**IV.**

In his objections, defendant complains that Adamson never gave him the time necessary to make an informed decision about whether to continue speaking. While it may have been advisable for Adamson to pause the interview and obtain an express waiver, defendant cites no authority requiring him to do so. Further, as in Smith, defendant immediately began speaking after Adamson stopped and continued to speak for over an hour. He makes no effort to distinguish his case from Smith.[1]

Defendant also complains that Adamson did not explore defendant's background prior to questioning. While a defendant's criminal history, education, and intelligence are relevant factors for the court to consider, defendant cites no authority requiring an officer to make a detailed inquiry into such matters before engaging in custodial interrogation. Nothing in the record suggests that Adamson should have harbored doubts about defendant's ability to understand what he was doing. In any event, even if defendant's personal characteristics did make him vulnerable to coercion (something he does not claim), defendant identifies no coercive conduct by the officers.

Finally, defendant notes that at no point during the interview did Adamson stop the questioning to ensure that defendant wanted to keep talking. Again, while that may have been advisable, defendant provides no authority requiring it. Cf. Berghuis v. Thompkins, 560 U.S. 370, 381 (2010) (holding that if an accused makes a statement that is ambiguous or equivocal

---

[1] In reply, defendant argues that the fact that he spontaneously began talking, without providing an explicit waiver, suggests that he was not intelligent enough to understand precisely what he was doing. However, the validity of a waiver does not turn on whether it was wise for the defendant to admit criminal conduct, see Harris v. Riddle, 551 F.2d 936, 939 (4th Cir. 1977), or whether he understood all of the ramifications, see Connecticut v. Barrett, 479 U.S. 523, 530 (1987); Perri v. Director, Dep't of Corrections, 817 F.2d 448, 452 (7th Cir. 1987).

5

Case 2:16-cr-00132-LA   Filed 03/06/17   Page 5 of 6   Document 27

or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his Miranda rights).

**V.**

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 21) is adopted, and defendant's motion to suppress (R. 11) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge

6

Case 2:16-cr-00132-LA   Filed 03/06/17   Page 6 of 6   Document 27